**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

CHRISTOPHER DODGE                                                                                    PETITIONER
ADC # 151850,

v.                                       5:14CV00172-JLH-JJV

RAY HOBBS, Director
Arkansas Department of Correction                                                         RESPONDENT

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.       The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

**I.   BACKGROUND**

Petitioner Christopher Dodge is an inmate at the Arkansas Department of Correction (ADC) East Arkansas Regional Unit where he is serving ninety-six (96) years for three counts of rape and one count of attempted rape. (Doc. No. 2.) He was convicted by a Sebastian County jury on February 17, 2012. (Doc. No. 8-4.)

Mr. Dodge timely appealed, contending that the trial court erred in denying his motion to suppress the statement he made to law-enforcement officers because it was obtained in violation of his right to counsel. *Dodge v. State,* 2013 Ark. App. 247. The Arkansas Court of Appeals affirmed finding no clear error in the trial court's denial of the motion to suppress - specifically holding defendant Dodge was not in custody at the time of the confession. *Id*. In its April 17, 2013 opinion, the Court of Appeals recited the following facts regarding Mr. Dodge's statement:

> Tara Flute, an employee of the Crimes Against Children Division of the Arkansas State Police, explained that she contacted Dodge by telephone on May 25, 2011. She asked if he would agree to do an interview as part of a child-maltreatment investigation involving his niece and told him that it would have to be conducted at the sheriff's office. She stated that the interview took place on May 30, 2011, in one of the interview rooms at the sheriff's office and that she was present for a portion of the interview, which was conducted by Sergeant Hobe Runion of the Sebastian County Sheriff's Department. She recalled that Dodge arrived with his brother-in-law, the child's father, and that his *Miranda* rights were read to him at the outset.

2

Sergeant Runion testified that the interview with Dodge lasted about two-and-a-half hours. He explained that he Mirandized Dodge before starting the interview and that Dodge seemed to be of above-average intelligence, literate, confident, and somewhat knowledgeable about the process. Sergeant Runion testified that Dodge executed a waiver-of-rights form; he stated that at no time did it appear to him that Dodge did not understand his rights. Sergeant Runion explained that Dodge was not under arrest; that Dodge was not placed in cuffs or restraints; and that Dodge would have been free to leave the sheriff's office.

For purposes of this appeal, the critical portion of the conversation between Dodge and Sergeant Runion occurred long after the interview had begun and preceded Dodge's request to go to the bathroom, which will be discussed *infra*:

Runion: I'd rather you just tell me what happened, Chris. ... You know, we've been playing games for, we've been playing games for almost two hours, haven't we?

Dodge: No, we really haven't. But you think we have.

Runion: I do. What would you feel like in my position? You know, I've laid everything out. I haven't kept anything from you.

Dodge: Like I said, I don't do what you do, okay? I find....

Runion: Yeah, but you're a smart guy. You know what I know. I told you everything I know.

Dodge: *Hey, can I get a call in for a lawyer?*

Runion: Hmm?

Dodge: *Okay? I really need to call for a lawyer. I mean, I didn't even have to come down here and talk ...*

Runion: You're right.

Dodge: ... with you today.

Runion: ...

Dodge: Okay?

Runion: You're right, you didn't. You're right. And I appreciate that. I think that that's the ...

Dodge: Uh, that's the first step on the road to admittance of something.

3

Runion: No, no. It's, it's the, uh, it's the right thing to do. It's the right thing to do. And I told you right when you came in, first thing I do is I introduce myself and I said, I appreciate you coming in.

AM: Want water?

Dodge: Not particularly, but I'll take it since I've had nothing to eat today.

Runion: Wasn't that the first thing I said to you when you came in?

Dodge: Yeah.

Runion: I appreciate you coming in, didn't I? Very first thing. I said, "I'm Hobie Runion. I appreciate you comin' in today." That doesn't end there. I'd much rather. I would much rather you just tell me what happened, Chris. And have to not even have to go through this test and go through this again. I'd rather you just tell me what happened.

(Emphasis added.)

Sergeant Runion explained that he regarded Dodge's comments as "almost a rhetorical question," that the comments were ambiguous, and that Dodge continued talking after making the comments. He said that he thought if Dodge was finished talking to him that Dodge would clarify and tell him that he wanted an attorney and that he was "done talking." Sergeant Runion stated that he was prepared to stop if Dodge had done that, but Dodge never did.

Sergeant Runion explained that Dodge subsequently asked to go to the bathroom, approximately two hours after the interview had begun, and that he was allowed to do so unescorted and unattended. According to him, the bathroom was approximately twenty to twenty-five feet away from the interview room. Sergeant Runion explained that when he thought Dodge was probably almost done, he left the interview room, went out into the hall, and saw Dodge coming out of the bathroom, holding his neck, and then falling to the floor. He initially thought Dodge had had a stroke or heart attack and yelled for someone to call 911; but when he got closer to Dodge, Sergeant Runion said that he could see a small puncture wound on Dodge's neck that did not appear to be serious. He then had one of the jail nurses and an EMT assess Dodge's neck. Sergeant Runion explained that Dodge had "poked himself in the neck" using his security badge (Dodge, who worked as a private security officer, came to the interview in his uniform); that there was a superficial puncture wound on each side of his neck, with only a "speck" of blood on one side and "no bleeding or tearing or anything like that." He said the entire incident lasted under five minutes.

Sergeant Runion testified that after Dodge returned to the room, Dodge announced, "It's all true," and then explained that he had engaged in anal sex with his niece at several locations in Fort Smith, Hackett, and Greenwood, and on White Oak

4

Mountain Road.

*Id*. at 2-5.

On June 6, 2013, Mr. Dodge filed a petition for post conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. (Doc. No. 8-4.) In his petition, Mr. Dodge alleged his counsel was ineffective, that being charged for three counts of rape was a violation of double jeopardy, that he was entitled to relief because his confession was coerced and thereby inadmissible, and finally that his right to due process was violated because the information failed to specify the date and time of the alleged crimes. (*Id*.) After the State filed its response (Doc. No. 8-5), the circuit court denied Mr. Dodge's requested relief in an order entered June 27, 2013. (Doc. No. 8-6.)

Mr. Dodge appealed that decision to the Arkansas Supreme Court on July 19, 2013. (Doc. No. 8.) On March 13, 2014, the Arkansas Supreme Court affirmed the trial court because it was "clear from the record that [Petitioner] could not prevail if an appeal were permitted to go forward." *Dodge v. State,* 2014 Ark. 116 (2014.) The Supreme Court held, "A review of the petition and the order reveals no error in the trial court's decision to deny relief." *Id.*

Mr. Dodge now seeks relief through the instant federal Petition for Writ of Habeas Corpus (Doc. No. 2), filed on May 1, 2014. In it, he alleges: (1) there was insufficient evidence to support his conviction; (2) his trial counsel failed to file a properly based and supported motion to suppress his confession; (3) the trial court abused its discretion by accepting the jury's recommendation of consecutive sentences; and (4) counsel was ineffective because his Rule 37 appeal was dismissed. (Id. at 3-7.)

After careful review of the Petition and Response, this Court concludes the Petition should be DISMISSED for the following reasons.

## II.   ANALYSIS

### A.   Claims 1 and 3

Respondent argues the first and third claims in Mr. Dodge's Petition are procedurally defaulted. (Doc. No. 8 at 3.) The Court agrees.

Before seeking federal habeas review, a state prisoner must first fairly present the substance of each claim to each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *See* 28 U.S.C. § 2254(b) (stating a state prisoner must exhaust available state court remedies before raising a claim in a federal habeas corpus proceeding). This requirement is in place to afford the State the opportunity to correct any constitutional errors before the federal courts intervene. *Lenza v. Wyrick*, 665 F.2d 804, 807-8 (8th Cir. 1981); *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("We have consistently adhered to this federal policy for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation") (citations omitted).

Here, Mr. Dodge never raised his claim — that there was insufficient evidence to support his conviction on direct appeal, nor did he allege that the trial court should have acted under its own authority to run his sentences concurrently, even though the jury recommended his sentences be served consecutively — until he filed the instant Petition. He never sought review for those two claims on appeal, and as such, no state court has been afforded an opportunity to consider them. Because Mr. Dodge failed to do so, claims 1 and 3 are procedurally defaulted.

Where procedural default has occurred, federal habeas review is permitted only if the petitioner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice, that is, that a constitutional violation has resulted in the conviction and

6

continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Neither is applicable here. Mr. Dodge fails to show any cause or prejudice to excuse his undisputed procedural default.

Although questions arise whether the United States Supreme Court's holding in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), could generally lead to a showing of "cause" for procedurally defaulted claims, the Court concludes it would not apply in this case. Assuming *Martinez* applies, this Court would perform a merits review of the defaulted claims if (1) the claim of ineffective assistance was substantial, (2) the "cause" was that Mr. Dodge had no counsel in the postconviction proceeding, (3) the Rule 37 proceeding was the initial review proceeding with respect to the ineffective assistance of counsel claim, and (4) it was highly unlikely that Mr. Dodge had a "meaningful opportunity" to raise his ineffective assistance claims on direct appeal. *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). Here, Mr. Dodge's claims fail on the first prong of the analysis. Given the facts in this case and the claims raised, the Court concludes that none of the defaulted claims rise to the level of "substantial."

### B.    Claims 2 and 4

Mr. Dodge's second claim — that his counsel was ineffective for failing to properly pursue a motion to suppress — was raised in his Rule 37 petition, which was denied by the trial court and ultimately dismissed by the Arkansas Supreme Court. (Doc. Nos. 8 and 12.) In the interests of finality and federalism, federal habeas courts, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Under the AEDPA, federal review of underlying state court decisions are limited because federal courts may only grant habeas relief if the claim was adjudicated on the merits in the state court proceeding and the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); see also *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision will be based on an "unreasonable determination of the facts in light of the evidence presented . . . only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003). Such is not the case here.

The Arkansas Supreme Court correctly found:

> According to the trial record, the trial court found that [Petitioner's] statement was voluntary based on evidence presented at the suppression hearing. Because the trial record shows that counsel, in fact, made both motions that [Petitioner] raised as a basis for his ineffective-assistance claim, he is not entitled to relief based on these allegations of ineffective assistance.

*Dodge,* 2014 Ark. at 7-8.

In reviewing a state court conviction, this Court must presume any factual finds made by the state court to be correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C.

§ 2254(e)(1). Mr. Dodge provides no evidence to rebut this presumption.

Further, the state's highest court correctly applied the standard set forth in the United States Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668 (1984), and concluded that Mr. Dodge failed to show that his counsel's performance fell below an objective standard of reasonableness, or that he was prejudiced by the alleged errors of counsel.

Under the two-prong *Strickland* test, the benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. As the Arkansas Supreme Court correctly found, Mr. Dodge failed to reach that mark. Specifically with regard to his claim that counsel was ineffective for failing to file a motion to suppress his allegedly coerced confession, the Supreme Court of Arkansas held:

> [C]ounsel filed two suppresion motions, and hearings were held on both. The first motion asserted that [petitioner's] statement should be suppressed because there was not an intelligent waiver of his rights and his statement was not voluntary. The second motion asserted that [petitioner's] right to an attorney was violated during the statement. The trial court denied both motions. According to the trial record, the trial court found that [petitioner's] statement was voluntary based on evidence presented at the suppression hearing. Because the trial record shows that counsel, in fact, made both motions that [petitioner] raised as a basis for his ineffective-assistance claim, he is not entitled to relief based on these allegations of ineffective assistance.

*Dodge,* 2014 Ark. at 7-8.

After careful review of the Petition and Response, this Court concludes that the state's highest court's findings did not entail an unreasonable application of federal law on any point. In reviewing an ineffective assistance claim under the "unreasonable application" clause of § 2254(d)(1), "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (quoting *Schriro*

*v. Landrigan*, 550 U.S. 465, 473 (2007)). The Arkansas Supreme Court reasonably applied *Strickland* to the facts of Mr. Dodge's claim of ineffective assistance of counsel.

Mr. Dodge's forth and final claim is that he was entitled to effective assistance of counsel during post-conviction proceedings pursuant to *Martinez v. Ryan,* 132 S.Ct. 1309 (2012). As the Respondent correctly notes, this claim rests on an assumption that Mr. Dodge possessed a federal constitutional right to counsel in post-conviction proceedings which is directly contrary to the holding in both *Martinez* and *Coleman v. Thompson*, 501 U.S. 722 (1991). There is no constitutional right to the assistance of counsel in filing a petition or appeal for collateral review.

In *Martinez*, the Supreme Court of the United States expressly rejected a rule establishing a constitutional right to the assistance of counsel on collateral review. *Martinez,* 132 S.Ct. at 1315, 1319-20. As such, this claim is without merit. Additionally, as explained, *infra*, given the facts in this case and the claims raised, the Court concludes that pursuant to *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), none of Mr. Dodge's claims rise to the level of "substantial." So his fourth claim should be dismissed.

Having reviewed the record and the applicable law, the Court concludes that all of Mr. Dodge's claims have either been properly adjudicated by the Arkansas Supreme Court, were never properly presented to the state court for consideration, or are meritless. Accordingly, Mr. Dodge's Petition for Writ of Habeas Corpus should be DENIED.

### III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of

appealability: "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, the Petition is procedurally defaulted and without merit. Therefore, no certificate of appealability should be issued.

**IV.    CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.    The Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED.

2.    A certificate of appealability should not be issued.

3.    All pending motions be DENIED as moot.

DATED this 31st day of October, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE